IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


DAVID BLAKE, *et al*.,                          :

      Plaintiffs,                          :

                                       Case No. 3:06cv077

          vs.                          :

                                       JUDGE WALTER HERBERT RICE

MICHAEL BLAKE, *et al*.,                          :

      Defendants.                          :


DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION TO
AMEND/CORRECT/FILE FIRST AMENDED COMPLAINT (DOC. #24),
SUSTAINING DEFENDANT BLAKE'S MOTION FOR SUMMARY
JUDGMENT (DOC. #32), SUSTAINING DEFENDANTS CITY OF
DAYTON AND DAVIS'S MOTION FOR SUMMARY JUDGMENT (DOC.
#33); JUDGMENT TO BE ENTERED ON BEHALF OF DEFENDANTS
AND AGAINST PLAINTIFFS ON PLAINTIFFS' FEDERAL CLAIMS;
PLAINTIFFS' PENDENT STATE LAW CLAIMS DISMISSED, WITHOUT
PREJUDICE TO REFILING IN A STATE COURT OF COMPETENT
JURISDICTION; TERMINATION ENTRY


The genesis of this litigation was the fatal shooting of Niema Thompson-

Blake ("Niema") by her husband, Michael Blake ("Michael"), who was then a City of

Dayton ("City") police officer.  Plaintiffs, David Blake (as executor of Niema's

estate) and Nevada Blake (individually, as Niema's mother, and as guardian of

Niema's minor children), bring suit asserting various federal and state claims against Michael and the City.[1]  All of the claims relate, in some fashion, to the shooting incident and the alleged wrongful conduct that occurred either before, during or after that event.

Presently before the Court are the Plaintiffs' Motion to Amend/Correct/File a First Amended Complaint (Doc. #24), Michael's Motion for Summary Judgment (Doc. #32) and the City's Motion for Summary Judgment (Doc. #33).  At the outset, since there is no opposition to the same and because the Court finds no prejudice in so doing, the Court SUSTAINS the Plaintiffs' Motion to Amend/Correct/File a First Amended Complaint (Doc. #24).  The Court has relied on the Amended Complaint, filed contemporaneously with said Motion, in its conclusions herein.

Of the eleven claims asserted in the Amended Complaint, nine are state law

---

[1]In their Complaint, the Plaintiffs also name Julian Davis, the City's Chief of Police, in his individual and official capacity, as a Defendant. Doc. #24, Attach. #1 (Am. Compl.) at 2.  In their Memoranda in Opposition to the Defendants' Motion for Summary Judgment, the Plaintiffs drop their claim against Chief Davis, in his individual capacity, leaving their official capacity claim against him, which is in essence a claim against the City. Doc. #42 at 27; Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").
The Complaint also names as Defendants, in both their individual and official capacities, "Jane and/or John Does," who are identified as "all officers, agents, employees, attorneys or representative[s] of the City of Dayton, Ohio and the Dayton Police Department." Doc. #24, Attach. #1 at 2.  The Plaintiffs make no further mention of the "Jane and/or John Doe" Defendants in their Memoranda in Opposition, so the Court concludes that the Plaintiffs bring this suit strictly against the City of Dayton and Michael Blake.

claims and two are claims under federal law.[2]  Because the Court finds that there

are no genuine issues of material fact, on the two federal claims, thus finding in

favor of the Defendants on their Motions for Summary Judgment, on those claims,

and because the Court declines to exercise pendent jurisdiction over the state law

claims, the Court's Opinion herein will be strictly limited to a discussion of the

federal claims.


I.    FACTS[3]

      A.    Shooting Incident - February 19, 2005

      In February of 2005, Michael was a police officer, employed by the City of

Dayton in its Bureau of Identification.  Doc. #33, Ex. #1 (White Aff.) ¶ 4.  Michael's

_____

     [2]The Amended Complaint actually asserts twelve claims, but the Plaintiffs
withdrew one of the claims (civil conspiracy; Count VIII), in their Memorandum in
Opposition to the Defendants' Motion for Summary Judgment.  Doc. #24, Attach.
#1 ¶¶ 91-95; Doc. #42 at 31.  The federal claims comprise Counts V and VI, while
the remaining state law claims are as follows:  violation of numerous state criminal
statutes (Count I), assault and battery (Count II), wrongful death (Count III),
survivorship (Count IV), dereliction of duty (Count VII), loss of consortium (Count
IX), intentional/negligent infliction of emotional distress (Count X), tortious
interference with inheritance rights (Count XI) and intentional/negligent spoliation of
evidence (Count XII).  Doc. #24, Attach. #1.  All claims are seemingly made against
all Defendants, except the assault and battery claim, which is asserted against only
Michael.  Id. at 7.

     [3]Since this case comes before the Court on the Defendants' Motions for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motions in the manner most favorable to the Plaintiffs, as the parties against
whom the Motions are directed.  Servo Kinetics, Inc. v. Tokyo Precision
Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

shift ended at 8:00 a.m., on Saturday, February 19, 2005. Id. ¶ 5. At approximately 3:30 p.m. that afternoon, Michael contacted the Dayton Police Department dispatcher to report that he had just shot his wife, Niema, inside their home, during a domestic dispute in which Niema reportedly first attacked Michael with a butcher knife. Doc. #42, Ex. #1 (Firearms Review Rpt.) at 1. Michael fired a single gunshot to Niema's head, using a City-issued weapon, and she died a short time later. Id. Michael was wearing civilian clothes, at the time of the incident. Doc. #33, Ex. #1 (White Aff.) ¶ 8.


      **B.**   <u>City's Awareness of Michael's Domestic Dispute History</u>

On December 5, 1999, Michael was arrested for domestic violence, in an incident with his ex-wife, but the charges were later dropped. Doc. # 45 (W. Smith Dep.) at 46-48.[4] Michael and Niema were married in approximately early 2003. Doc. #34, Attach. #4 (N. Blake Dep.) at 14. In July of that year, there were two calls made from their residence to the Dayton Police Department, involving disputes between Michael and Niema. Doc. #46 (Via Dep.) at 38-45. Niema made the first of those calls, occurring on July 5, 2003, during which she indicated that her husband was "making threats to her" and that she wanted to talk to someone

---

[4]It is implied in the deposition testimony that the arrest was made by the City of Dayton Police Department, but it is not clear. Doc. # 45 (W. Smith Dep.) at 46-50. It is also not clear whether the City of Dayton was aware of the incident, at the time of the arrest.

about it. Id. at 44-45.  The Dayton Police Department dispatched an officer to the Blake residence to investigate and concluded that there was no foundation to the allegation of threats; rather the dispute was merely a "verbal argument." Id. at 45. The second call occurred three days later, on July 8, 2003, and was made by Niema's eleven year old daughter. Id. at 38-39; Doc. #34, Attach. #1 (Thompson Dep.) at 6-8.  The police report from the phone call is quite unclear, but a reading that is most favorable to the Plaintiffs indicates that the daughter called from the family residence and reported that Michael was beating Niema. Doc. #46 (Via Dep.) at 39.  Two crews were dispatched to the residence and spent over an hour investigating. Id. at 43-44.  A police report of that incident was either not prepared or not put forth into evidence, in this case, and the police apparently made no arrests. Doc. #42 (Pls.' Mem. Opp'n) at 18.[5]

---

[5]Apparently, the couple were arguing about whether Michael had the right to take certain of Niema's lottery winnings.  Niema became angry with Michael for insisting that he did and, in the course of the argument, broke one of his car windows by throwing a shoe at it. Doc. #34, Attach #2 (D. Smith Dep.) at 13-18.

Niema's children, who were present at the residence that day, testified that they were not aware of any physical abuse or threats of physical abuse occurring. Doc. #34, Attach. #1 (Thompson Dep.) at 5-10; Doc. #34, Attach #2 (D. Smith Dep.) at 13-18; Doc. #34, Attach #5 (Mayho Dep.) at 8-11.  Niema's nine year old son, who actually witnessed the dispute between Michael and Niema, testified that the couple merely had a verbal dispute and that Michael neither threatened to harm, nor actually physically harmed Niema. Doc. #34, Attach #2 (D. Smith Dep.) at 13-18.  He further testified that when the police arrived they "took [Michael and Niema] apart and asked them what happened" and when they told them, the police said, "you all need to cool down so then they separated for a couple of days." Id. at 17.

II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such

6

that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv.,</u>
<u>Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if
any, show there is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Summary
judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly
can be resolved only by a finder of fact because they may reasonably be resolved
in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992)
(citation omitted).  In determining whether a genuine issue of material fact exists, a
court must assume as true the evidence of the nonmoving party and draw all
reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255.  If the
parties present conflicting evidence, a court may not decide which evidence to
believe, by determining which parties' affiants are more credible; rather, credibility
determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal
Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining
whether there is a genuine issue of material fact), "[a] district court is not . . .
obligated to wade through and search the entire record for some specific facts that
might support the nonmoving party's claim." <u>InterRoyal Corp. v. Sponseller</u>, 889
F.2d 108, 111 (6th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1091 (1990); <u>see also</u> <u>L.S.</u>

7

Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III.     ANALYSIS

The Plaintiffs assert two federal claims. One claim alleges that the Defendants violated their rights to substantive due process, procedural due process and equal protection, through several of the City's policies or customs. Doc. #24, Attach. #1 ¶¶ 73-83 (sixth claim for relief). The other federal claim alleges violations of certain unspecified constitutional rights, as a result of various of the Defendants' policies and practices, as well as the Defendants' failure to train or supervise its agents. Id. ¶¶ 54-72 (fifth claim for relief).

A.    Federal Claims against Michael

Although the Complaint's headings for the two federal claims state that those claims are "against all Defendants," the language therein directs them solely against the City; rather than against Michael, in that all allegations are framed as violations pertaining to either the City's "policy, custom and/or pattern and/or practice" or "failure to train, control, and/or supervise its agents." Doc. #24, Attach. #1 ¶¶ 54-72.  The texts of the Plaintiffs' two Memoranda in Opposition to the Defendants' Motions for Summary Judgment also make no allegations against Michael, in the discussion about the alleged constitutional violations. See Doc. #42 (Pls.' Mem. Opp'n to City's Summ. J. Mot.) at 15-31; Doc. #44 (Pls.' Mem. Opp'n to Michael's Summ. J. Mot.) at 8-9.[6]  The only mention of Michael in the Plaintiffs' Memoranda, as it tangentially relates to a federal claim, is in the discussion pertaining to whether the Defendants were acting under color of state law.[7]  In that section, the Plaintiffs argue that Michael was acting under color of state law when he shot Niema, because he used a City-issued weapon when he shot her and

_____

[6]In their Memorandum in Opposition to Michael's Motion for Summary Judgment, the Plaintiffs include a section entitled "Defendant Blake Violated Plaintiffs' Constitutional Rights." Doc. #44 at 9.  In that section, which is less than a page long, the Plaintiffs refer to the legal standard for a state law wrongful death claim, but make no mention of any alleged constitutional violation. Id. ("Defendant should know that the threshold standard for conviction in a criminal case is beyond a reasonable doubt, which is far higher of a standard than a wrongful death case, which is merely preponderance of the evidence.").

[7]In order for the Plaintiffs to successfully bring a claim, alleging violation of their constitutional rights, they must proceed under 42 U.S.C. § 1983, which requires that a defendant act under the color of state law, in order to be liable.

because he "allegedly tried to disarm and subdue his wife as she attacked him [and thus,] essentially tried making a *de facto* seizure and arrest of her person, assuming his story is true." Doc. #42 at 26.[8]  Despite this language, nowhere in the Complaint, nor anywhere else in the Memoranda, do the Plaintiffs assert or even suggest that a constitutional violation occurred as a result of the shooting itself. All of the policies and practices arguments, as well as the lack of training arguments, pertain to the City's conduct either leading up to the shooting, the police conduct at the scene of the shooting, or the investigation that occurred after the shooting. See Doc. #42 at 15-31; Doc. #44 at 8-9.

Even assuming, however, that the Plaintiffs did argue that Michael somehow deprived the Plaintiffs of a constitutional right, either as a result of a *de facto*

---

[8]It is unclear what the Plaintiffs mean here, with regard to the comments about Michael disarming and subduing his wife.  There is no citation to the record and neither the statement of facts, in the Plaintiffs' Memorandum, nor the Complaint contains such allegations.  Rather, the facts concerning the shooting, as set forth in the that Memorandum, are as follows:

> Officer Blake stated that immediately before he killed his wife that the pair had gotten into an argument.  Officer Blake stated he initially left the house to go to a Kroger grocery store where he worked security as a second job to look to see if Kroger had any additional shifts.  Officer Blake stated as he was outside leaving his property, he heard his wife yelling and destroying things inside the house.  Officer Blake re-entered and confronted his wife, where he pulled his city-issued Glock from his "fanny-pack" and shot her.

Doc. #42 at 4 (citing Firearms Review Report, which is attached to that Memorandum, as Exhibit 1).

10

seizure/arrest of Niema or of actually shooting Niema,[9] Michael was unquestionably not operating under color of state law, in that his conduct was "not related in some meaningful way either to [his] governmental status or to the performance of his duties." Burris v. Thorpe, 2006 U.S. App. LEXIS 597, *8 (6th Cir. Jan. 9, 2006) (citing Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 126 (1st Cir. 1999)).  The only evidence put forth by the Plaintiffs, pertaining to this issue, is the fact that Michael, while off-duty, in civilian clothes and in their residence, used a City-issued weapon to shoot Niema.  This is insufficient to indicate that that there is a "sufficiently close nexus between the government and [Michael's] conduct so that the conduct may be fairly attributed to the state itself." Chapman v. Higbee Co., 319 F.3d 825, 834 (6th Cir. 2003). Contra Layne v. Sampley, 627 F.2d 12, 13 (6th Cir. 1980) (finding a genuine issue of material fact when defendant, off-duty police officer, carried a city-issued weapon, the precipitating argument's genesis was in the performance of his police duties and the threat to the officer was received through a police agency).  Because there is no genuine issue of material fact, about whether Michael was operating under color of state law during the

---

[9]"In general, state officials are not constitutionally obligated to protect members of the public at large from crime." Culberson v. Doan, 125 F. Supp. 2d 252, 266 (S.D. Ohio 2000) (citing DeShaney v. Winnebago County of Dep't of Soc. Servs., 489 U.S. 189, 195-97 (1989); Martinez v. California, 444 U.S. 277, 284-85 (1980); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 700 (9th Cir. 1990); Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982); Was v. Young, 796 F. Supp. 1041, 1045 (E.D. Mich. 1992)).

incident in question and, thus, whether he committed a constitutional deprivation, Michael's Motion for Summary Judgment (Doc. #32), as to the Plaintiffs' federal claims, is SUSTAINED.


      B.     <u>Federal Claims against the City</u>

As previously stated, the Plaintiffs assert two federal claims, to wit:  (1) a violation of their rights to substantive due process, procedural due process and equal protection, through several of the City's policies or customs (sixth claim for relief); and (2) a violation of certain unspecified constitutional rights, as a result of various of the City's policies and practices, as well as the City's failure to train or supervise its agents (fifth claim for relief). Doc. #24, Attach. #1 ¶¶ 54-83.  The Court will first analyze the Plaintiffs' sixth claim for relief, followed by a review of their fifth claim.


      1.     <u>Sixth Claim for Relief - Violation of Plaintiffs' Due Process and Equal Protection Rights</u>

      a.     <u>Substantive Due Process</u>

A plaintiff can establish a substantive due process violation by demonstrating either a deprivation of a particular constitutional right or an action that "shocks the conscience." <u>Midkiff v. Adams County Reg'l Water Dist.</u>, 409 F.3d 758, 769 (6th Cir. 2005) (quoting <u>Mansfield Apartment Owners Ass'n v. City</u>

of Mansfield, 988 F.2d 1469, 1474 (6th Cir.1993)).  In this case, the Plaintiffs urge the "shocks the conscience" theory, arguing that certain of the City's actions were sufficiently outrageous, so as to shock the conscience.  The Plaintiffs offer the following actions, in support of their argument: (1) with regard to conduct preceding the shooting, that the City failed to either make arrests or create reports (in contravention of its Police Officer Domestic Violence Policy) of the previous domestic incidents at the Blake residence;[10] (2) as to the shooting incident itself, that Michael was not arrested for the shooting incident, was told he was not a criminal suspect, and was not read his Miranda warnings; (3) pertinent to the investigation of the shooting, that Michael's clothing was not collected until three days after the incident and that the officer assigned to make sketches of the crime scene submitted false sketches. Doc. #42 (Pls.' Mem. Opp'n) at 28-29.[11]  The Plaintiffs, rather confusingly, conclude this argument by stating that "[t]he real thrust of [their] claim regarding the failure to follow policy is that there are no records regarding investigations of Dayton Police officers suspected of domestic violence." Id. at 29.

---

[10]The Plaintiffs stretch the facts a bit here by stating that "[t]he police were called by [Niema] on numerous occasions" (Doc. #42 (Pls.' Mem. Opp'n) at 28), when the evidence indicates that only two calls were made to the police from the Blake residence - one by Niema and one by Niema's daughter. See supra Section IB.

[11]The facts section of the Plaintiffs' Memorandum contains citations to the record, which arguably support the factual premises they assert here. See Doc. #42 at 3-14.

The Sixth Circuit has made it clear that the "shocks the conscience" test is generally only applicable in the limited case of physical abuse. "[T]he Sixth Circuit has questioned the continued vitality of this strand of substantive due process jurisprudence, [yet] it nevertheless recognizes it in the exclusive context of cases involving physical abuse." Wedgewood Ltd. P'ship I v. Twp. of Liberty, 456 F. Supp. 2d 904, 933 n.35 (S.D. Ohio 2006) (citing Braley v. City of Pontiac, 906 F.2d 220, 225 (6th Cir. 1990)); see also Callihan v. Sudimack, 1997 U.S. App. LEXIS 17731, **7-11 (6th Cir. 1997) (in case where decedent's family alleged failure to adequately investigate decedent's death, finding the "shocks the conscience" test not applicable, since county's alleged acts were "not the type of brutal and inhumane acts that have shocked the conscience of courts in the past"); Culberson v. Doan, 125 F. Supp. 2d 252, 270-71 (S.D. Ohio 2000) (finding a genuine issue of material fact, as to the "shocks the conscience" test, based on evidence that indicated that, in the process of conducting a search for the victim, law enforcement official purposely gave suspected murderer opportunity to "remove and secrete" the victim's yet-undiscovered body from a lake in which he had dumped the body).[12]  Even assuming that all of the facts asserted by the

---

[12]Plaintiffs rely on Culberson, as the only case in support of their argument. Doc. #42 at 28-29 (citing Culberson v. Doan, 125 F. Supp. 2d 252 (S.D. Ohio 2000)).  While the Culberson case did not involve allegations of physical abuse of a live person, it did involve allegations that the murder suspect physically abused the corpse, in a conspiracy with a law enforcement officer to evade the search for the body, which this Court agrees is conduct sufficiently brutal and inhumane to shock the conscience of most courts.

Plaintiffs are true, they have set forth no facts to indicate that the City physically abused anyone and the facts they have asserted are not so brutal or inhumane, as to cause the Court to stray from generally accepted Sixth Circuit guidance, on this point.

The Plaintiffs alternatively argue the "state created danger," theory of proving a substantive due process violation. The Sixth Circuit has recognized that, in general, "[i]t is not a constitutional violation for a state actor to . . . fail to rescue those in need." Carver v. City of Cincinnati, 474 F.3d 283, 285 (6th Cir. 2007) (citing Jackson v. Schultz, 429 F.3d 586, 590 (6th Cir. 2005)). "There are, however, two exceptions to this rule: 1) the custody exception and 2) the state-created danger exception." Id. at 286 (citing DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-201 (1989)). The Plaintiffs rely on the state-created danger theory, arguing that the City created a danger for Niema, because it was aware of Michael's arrest for domestic violence against his prior wife, in 1999, and the two domestic incidents between Michael and Niema, in 2003, yet "[n]o reports were generated as per the Police Officer Domestic Violence Policy for any of these incidents." Doc. #42 at 30-31.

For the state-created danger exception to apply, a plaintiff must allege: "1) an affirmative act that creates or increases a risk that the decedent would be exposed to private acts of violence; 2) a special danger to the decedent, such that the defendants' acts placed decedent specifically at risk; and 3) that defendants

15

knew or should have known their actions specifically endangered the decedent."
Carver v. City of Cincinnati, 474 F.3d 283, 286 (6th Cir. 2007) (citing Kallstrom v.
City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998)).  Without deciding on the
second and third prongs of this test, it is clear that the Plaintiffs have set forth no
evidence to create a genuine issue of material fact to indicate that the City
affirmatively acted to create or increase a risk that Niema would be exposed to
private acts of violence. See Jones v. Reynolds, 438 F.3d 685, 691 (6th Cir. 2006)
("[A] failure to act is not an affirmative act under the state-created danger
theory.").

Accordingly, there is no genuine issue of material fact as to whether the
City's actions shock the conscience of the Court or whether the state created
danger theory applies.  There is, therefore, no merit to the Plaintiffs' substantive
due process claim.


b.    Procedural Due Process

The Complaint alleges that the City violated the Plaintiffs' procedural due
process rights by "depriving Plaintiffs of the right of civil redress against Michael
Blake, among other defendants.  The unlawful conduct was caused by an
established state procedure of cover-up, conflicts of interests, and utter
malfeasance in investigations." Doc. #24, Attach. #1 ¶ 78.

In procedural due process claims, plaintiffs must demonstrate state action

16

that deprives them of a constitutionally protected interest in "life, liberty, or property," without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990); Michael v. Ghee, 498 F.3d 372, 377 (6th Cir. 2007). Central to a plaintiff's case, then, is the assertion of the deprivation of such a constitutionally protected interest. In its Motion for Summary Judgment, the City correctly points out that the Plaintiffs, in this case, have failed to assert the violation of a such an interest. Doc. #33 at 13-14. The Plaintiffs offer nothing in response. See Doc. #42 (Pls.' Mem. Opp'n).

The Plaintiffs have neither a "life, liberty nor property" interest in a perfectly executed investigation, or for that matter in any investigation, of Michael's conduct. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005) (concluding that "respondent did not, for purposes of the Due Process Clause, have a property interest in police enforcement of the restraining order against her husband"); Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). As noted by the Supreme Court,

> the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. This result reflects our continuing reluctance to treat the Fourteenth Amendment as "a font of tort law."

Town of Castle Rock, 545 U.S. at 748 (quoting Parratt v. Taylor, 451 U.S. 527, 544 (1981)). Thus, the Plaintiffs' procedural due process claim fails, because there

17

is no genuine issue of material fact as to whether the City deprived the Plaintiffs of a constitutionally protected interest, without due process of law.

c.  Equal Protection

The Plaintiffs' third and final assertion, in their sixth claim for relief, is that the City violated their right to equal protection, because of its failure to follow its Police Officer Domestic Violence Policy (more on the City's alleged failure to follow this Policy, in the discussion below).  Like the due process claims, this claim is similarly unsupported by the record.

The Plaintiffs' argument is that "all victims to the knowledge of Plaintiffs regarding the Police Officer Domestic Violence Policy are women.  By failing to protect this protected class, Plaintiffs have created a genuine issue of fact as to whether police department has a policy of treating its police assault victims differently than assault victims." Doc. #42 at 31.  The Plaintiffs rely on Cellini v. City of Sterling Heights, 856 F. Supp. 1215 (E.D. Mich. 1994), in support of their position.

In Cellini, the plaintiff put forth evidence that demonstrated that the police had a policy of not making arrests, in the case of domestic assaults, unless the assault occurred in the presence of an officer. Id. at 1221.  The record was unclear as to how the police proceeded in non-domestic assault cases, but the District Court proceeded on the assumption that arrests in non-domestic cases could be

18

made, even if the assault did not occur in the presence of an officer. Id.

Because the defendants did not offer an explanation of what governmental interest

was served by requiring an officer to have witnessed a domestic assault before

making an arrest, as opposed to not having to witness the assault, in the non-

domestic setting, the Court found in favor of the plaintiff. Id. at 1220 n. 4, 1222

(applying a "rational relationship test, because the claim was based on membership

in "the class of victims of domestic violence, rather than on gender").

    In this case, the Plaintiffs have, indeed, put forth evidence to support their

contention that the City did not follow its Police Officer Domestic Violence Policy,

as will be further explained below.  Even assuming that the Plaintiffs are correct in

stating that the Policy was not followed, however, this fact alone does not

establish an equal protection violation.  As the Cellini Court noted, "there is no

general constitutional right to police protection, [but] the state may not discriminate

in providing such protection." Id. at 1220 (citing Watson v. City of Kansas City,

857 F.2d 690, 694 (10th Cir. 1988); Bartalone v. County of Berrien, 643 F. Supp.

574, 577 (W.D. Mich. 1986)).  Thus, in order to establish a viable equal protection

claim, it is imperative that the Plaintiffs set forth some evidence that indicates that

victims of police officer domestic violence "are provided with less protection than

those of other crimes." Jones v. Union County, 296 F.3d 417, 427 (6th Cir.

2002).  Since the Plaintiffs have put forth no evidence pertaining to how the City

protects victims of other crimes, there is no genuine issue of material fact on the

19

Plaintiffs' equal protection claim and this claim must, therefore, fail.

Because there are no genuine issues of material fact as to any of the alleged constitutional violations under this claim, the City's Motion for Summary Judgment (Doc. #33), as it pertains the Plaintiffs' sixth claim for relief, is SUSTAINED.

### 2.  Fifth Claim for Relief - Violation of Plaintiffs' Civil Rights

Count Five of the Complaint sets forth multiple contentions regarding the City's "policies, customs and/or patterns and/or practices," which allegedly "violated the constitutional rights of the Plaintiffs and Plaintiffs' decedents [sic]," as well as asserting a failure to "train, control, and/or supervise its agents." Doc. #24, Attach. #1 ¶¶ 54-72.  The argument for this claim in the Plaintiffs' Memorandum in Opposition to the City's Motion for Summary Judgment, however, primarily hinges on the City's alleged failure to follow its Police Officer Domestic Violence Policy ("Policy").[13]  E.g., Doc. #42 at 16-19.

---

[13]Said Policy is attached to the Plaintiffs' Memorandum. Doc. #42, Attach. #5.

The Plaintiffs briefly allege violations of two other policies. See Doc. #42 at 19 (alleging violations of General Order 2.01-2 and 3.03-5).  The Court's analysis, however, does not change whether the Plaintiffs allege violations of one or multiple policies.

The Plaintiffs also set forth the standard for failure to train or supervise, on page 19 of their Memorandum, at the opening of a new section, but follow that legal standard with a four page discussion of how the City violated the Police Officer Domestic Violence Policy.  Their concluding sentence/paragraph of that section reads, "At a minimum, Defendant City of Dayton has a [sic] no history of enforcing his [sic] Police Officer Domestic Violence Policy against its officers." Id. at 23.

In researching for and preparing their Memorandum in Opposition, the Plaintiffs have spent much effort attempting to demonstrate how the City violated its Policy, in several different ways.  Unfortunately, however, a determination of whether the City violated or did not violate its Policy is of no consequence to the Plaintiffs' § 1983 claim.

"[T]o survive summary judgment in a § 1983 action, [a plaintiff] must demonstrate a genuine issue of material fact as to the following two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 463 (6th Cir. 2006) (emphasis added) (quoting Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005)).  The seminal Supreme Court case pertaining to municipal liability under § 1983 is Monell v. Dept. of Social Services, 436 U.S. 658 (1978).  The Sixth Circuit explains the Monell rule, as follows:

> A municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights. Id. at 694; see also Doe v. Claiborne County, 103 F.3d 495, 507 (6th Cir. 1996) ("Under Monell, the [defendants] cannot be found liable unless the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . leads to, causes, or results in the deprivation of a constitutionally protected right.").

Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 607 (6th Cir.

2007).  Thus, in order for a municipality to be held liable, under § 1983, a plaintiff must show that a municipal policy or custom was the moving force behind the plaintiff's constitutional injury.

In this case, the Plaintiffs assert that the offending policy or custom was the City's failure to follow its Policy.  While the fact that a municipality failed to follow its own policy can, in certain circumstances, be the starting point for showing that the municipality committed a § 1983 violation, see Gailor v. Armstrong, 187 F. Supp. 2d 729, 734-35 (W.D. Ky. 2001) (noting that the law requires a "precise showing that in spite of these written polices that the [municipality] actually followed a different policy" and that the "deviation from the written policy was 'so permanent and well settled as to constitute a 'custom or usage' with the force of law'"),[14] the Plaintiffs have overlooked the central component of their § 1983 claim -- the assertion of a constitutional injury.

The Complaint's text for the fifth claim speaks in vague terms of constitutional violations, but does not suggest any particular constitutional right that the City violated. Doc. #24, Attach. #1 ¶¶ 54-72.  In their Memorandum in Opposition, the only hint the Plaintiffs make of a constitutional violation, pertinent to their fifth claim for relief, is the following statement:  "Plaintiffs assert that Decedent, Niema Thompson-Blake, was murdered because Defendant city of Dayton refused to enforce [the Policy]." Doc. #42 at 16.  This language implies

---

[14] "However, failure to comply with a state regulation is not itself a constitutional violation." Barber v. Salem, 953 F.2d 232, 240 (6th Cir. 1992).

that Niema's death is the asserted constitutional injury.  As previously stated, however, state officials are generally "not constitutionally obligated to protect members of the public at large from crime."[15] <u>Culberson v. Doan</u>, 125 F. Supp. 2d 252, 266 (S.D. Ohio 2000) (citing <u>DeShaney v. Winnebago County of Dep't of Soc. Servs.</u>, 489 U.S. 189, 195-97 (1989), among others).

The Plaintiffs having set forth no facts to demonstrate a recognizable constitutional injury, as part of their fifth claim for relief, and the Court having already determined that there is no merit to the constitutional deprivations alleged as part of the sixth claim for relief, the City's Motion for Summary Judgment (Doc. #33), as it pertains the Plaintiffs' fifth claim for relief, is SUSTAINED.


IV.     STATE LAW CLAIMS

"Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." <u>Pilgrim v. Littlefield</u>, 92 F.3d 413, 417 (6th Cir. 1996) (citations omitted).  Because the Court has now disposed of all of the federal claims herein, it dismisses all of the pendent state law claims, without prejudice to renewal in a state court of competent jurisdiction.


V.      CONCLUSION

---

[15]<u>See</u> <u>supra</u> note 8.

The Plaintiffs' Motion to Amend/Correct/File First Amended Complaint (Doc. #24), Michael's Motion for Summary Judgment (Doc. #32) and the City's Motion for Summary Judgment (Doc. #33) are SUSTAINED.  Judgment is to be entered on behalf of the Defendants and against the Plaintiffs on the federal claims asserted herein, with the state law claims dismissed, without prejudice to refiling in a state court of competent jurisdiction.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


March 13, 2008


        ___/s/ Walter Herbert Rice_____
        WALTER HERBERT RICE, JUDGE
        UNITED STATES DISTRICT COURT


Copies to:
Counsel of record